UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA MIAMI DIVISION

MARIA BRAGG,

    Plaintiff,

v.

CENTENE CORPORATION,
a Missouri company

    Defendant.

Case No. 25-cv-23318

## COMPLAINT AND JURY DEMAND

Plaintiff, Maria Bragg ("Bragg" or "Plaintiff"), hereby sues Defendant, Centene Corporation ("Centene"), for retaliation under the Florida Whistleblower ACT ("FWA") and to redress the injuries cause by that retaliation and alleges:

## INTRODUCTION

1. This is an action for damages brought by Bragg, a nurse, against her former employer for a retaliatory termination in violation of the Florida Whistleblower Act.

2. Bragg was employed by Centene as a concurrent review nurse for almost a decade.

3. For the majority of her career, Bragg's job involved reviewing patients' records to determine the medical necessity of procedures and hospital stays for the purposes of insurance coverage.

4. Bragg is licensed in Florida and only Florida.

5. This was never a problem, as Bragg's employment was to practice medicine in Florida by reviewing the records of Florida patients.

6. This all changed in the months before she was fired, when Bragg was told by

Centene that she would need to review records for patients outside the state of Florida.

7. Bragg expressed her concern that this would violate the Nurse Practice Act of the states where these new patients were being treated, because she did not have a nursing license that covered those states.

8. Bragg expressed her concern that, because these reviews were being conducted by a team that included her and other nurses who lacked the proper licenses, including nurses located overseas, Centene would be engaged in the illegal practice of medicine in those states where they lacked proper licensing.

9. Bragg also reported her concern to the Florida Nursing Board who told her that she should not be reviewing patients records for patients who were treated out of state.

10. Shortly after Bragg told Centene that she had contacted the Florida Nursing Board, she was suddenly told that her and the other members of her team would no longer be conducting reviews for out of state patients.

11. And then, after months of scrutiny and juggling her work schedule as a form of impromptu punishment, Centene fired Bragg, an act of illegal retaliation for expressing her objection to Centene's illegal practice of having nurses provide concurrent review in states where they were not licensed.

## PARTIES, JURISDICTION AND VENUE

12. This is an action for damages in excess of $75,000.00 exclusive of interest, costs, and attorneys' fees and for such other relief as is within the equitable jurisdiction of this Court.

13. Bragg is *sui juris* and has been a resident in Miami-Dade County, Florida at all material times.

14. Centene is a Missouri Corporation headquartered at Centene Plaza, 7700 Forsyth

Boulevard in St. Louis, Missouri.

15. At all times material hereto, Centene was an employer under the FWA.

16. At all times material hereto, Bragg was an employee under the FWA.

17. At all times material hereto, Bragg was employed by Centene within the meaning of the FWA.

18. Bragg was employed by Centene as a concurrent review nurse and Bragg worked within Florida during her entire time she was employed by Centene.

19. This Court has jurisdiction over the matter under 28 U.S.C. § 1332 as Plaintiff is a resident of Florida while Defendant is a Missouri Corporation.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district, Plaintiff lived and worked in this district during her career with Defendant, and Defendant has conducted business within this District during all relevant periods to this action.

21. Bragg has retained the undersigned counsel and is obligated to pay the undersigned a reasonable attorney's fee.

## GENERAL ALLEGATIONS

22. Bragg is a nurse who is licensed in Florida, and only Florida.

23. She does not have what is known as a "compact license" that would allow her to provide nursing services in other states.

24. Centene was aware of this when she was hired as a concurrent review nurse in May of 2016.

25. A concurrent review nurse is someone who reviews the medical documents of a patient on behalf the patient's insurer.

26. The insurer employs the concurrent review nurse to make sure that all of the

procedures, medications, and hospital stays that a patient is seeking coverage for were medically necessary.

27. That means that, while a concurrent review nurse is not going to be placing their hands directly on a patient, they are still engaged in the practice of medicine because they are making judgment calls as to what is medically necessary to treat a patient.

28. For the majority of her time as a concurrent review nurse, Bragg worked on Florida patients, as she is allowed to do by holding a Florida nursing license.

29. That changed around the winter holidays in 2023, when Bragg was told that she was going to be sent patient files for people who were receiving medical services outside the state of Florida.

30. Bragg did not believe this was legal because she did not hold a license in the states where these new patients were being treated.

31. This new team was staffed with nurses like Bragg who did not have licenses in those states, as well as nurses overseas, and Bragg was concerned that asking that team to provide concurrent review in states where they lacked the proper licensing would be improper.

32. Bragg made her objections known in writing, through communications with her supervisor Marsha Dutton and Jennifer Reczkowski, that she objected to reviewing the files of patients outside of Florida.

33. Centene continued to ask Bragg and other members of her team to review files for patients who had received medical treatment in states where they did not hold licenses.

34. For example, on December 18, 2023 Marsha Dutton wrote an email to Bragg informing her that although she replied "in the teams chat that you will only work Florida cases," Bragg needed to work on cases out of Arkansas for "business need" and reminded Bragg that she

was expected "to serve our member's regardless of State or Market."

35. Jennifer Reczkowski emailed Bragg that same day to inform her that she could not refuse to work out of state cases "once you have made the commitment to help or work" and that Bragg's job required her to work other states.

36. Bragg does not have a nursing license issued by the Arkansas State Board of Nursing, making it "unlawful" for her to "practice or offer to practice" nursing or to maintain that she is a credentialed nurse in that state under Ark. Code §17-87-101.

37. Arkansas also places strict restrictions on their Nursing Board's granting of licenses to noncitizen nurses, requiring them to be approved by multiple federal agencies before a license can be granted. Ark. Code. §17-87-313

38. Bragg was not the only nurse to make her objection to this new practice of providing out-of-state review known.

39. On October 20, 2024, another Centene nurse asked in writing "are we not supposed to work only our states?" because she had been told by a supervisor that nurses were only "supposed to work our own states."

40. A Centene supervisor responded, "no ma'am" and told Bragg's coworker that she could "take it up with Tracee, the new UM director" if she had issues with her assignment because they were working with a "skeleton crew" and so everyone had to do "the best we can."

41. Centene made it clear to Bragg and other members of her team that, despite her and other nurses' objections to being asked to provide nursing review for patients who were treated in states where they did not have proper licensing, they were expected to do exactly that to maintain their jobs.

42. This continued until August of 2024 when Bragg spoke to members of the Florida

Nursing Board, who told her that she should not be performing out-of-state concurrent reviews.

43. Bragg informed her supervisors that the Florida Nursing Board had cautioned her that it was improper for Centene employees to perform out-of-state concurrent reviews on August 9, 2024.

44. Ten days after Bragg told Centene that the Florida Nursing Board had affirmed her fears that she was being asked to do something illegal, Centene sent an email to Bragg and other members of her team that they would no longer be asked to review the records of patients in states where they did not hold the proper licenses.

45. Specifically, Centene informed Bragg and others that they would no longer "manage DE, NJ, and IN/MS metros."

46. Each of these states has a statute requiring nurses providing medical services in those states to hold valid licenses, making it illegal for unlicensed nurses to conduct concurrent reviews of the medical files of patients treated in those states.

47. Over the next few months, Centene began a campaign of harassment and retaliation against Bragg for reporting Centene's practice of requiring unlicensed out-of-state nursing work to the Florida Nursing Board and for objecting to the practice.

48. Suddenly Bragg's supervisors began to scrutinize every aspect of her work.

49. Centene also began to juggle Bragg's schedule around in ways that she had never been subjected to before.

50. Specifically, Bragg had always worked Monday through Friday with the occasional weekend on overtime pay.

51. After she went to the nursing board, Centene began to schedule Bragg for weekend shifts and forced her to take "flex-days" or days off in the middle of the week, disrupting her

schedule and denying her the usual overtime pay she would have received for weekend work.

52. After the months of intense scrutiny that began right after Bragg reported her concerns Bragg was fired from Centene without December 2, 2024.

53. Bragg was given only two reasons why she was fired, one vague, and the other purely false.

54. Bragg was told that the company wanted to "part ways" with her, and that she worked unapproved overtime in November of 2024.

55. However, an investigation by Centene's Human Resources had already determined that Bragg *had* been approved for the overtime and that she had done nothing wrong, making the only concrete reason Centene gave Bragg for her termination nonsensical.

## COUNT I
### *Florida Whistleblower Act (Retaliation)*
### (Fla. Stat. § 448.102(3))

56. Bragg re-alleges paragraphs 1-55 as if fully stated herein.

57. Florida's Private Whistleblower Act, Florida Statute § 448.102, prohibits an employer from retaliating against an employee who objected to, or refused to participate in, any activity, policy or practice in violation of a law, rule, or regulation.

58. Bragg objected to Centene asking her and other nurses to provide concurrent review services to assess the medical necessity of treatment patients received in states where they were not licensed to practice nursing. Among the states Bragg was aware her time was providing unlicensed review in are Arkansas, Delaware, New Jersey, Indiana, Missouri, North Carolina, Texas, and Nevada.

59. Each of those State's has a statute or regulation making it illegal to provide nursing services without a license issued by that State's board that State's licensing board

Arkansas: Ark. Code §17-87-101.

Delaware: Del. Code tit. 24 § 1909.

New Jersey: N.J. Stat. §45:11-37

Indiana: Ind. Code § 25-23-1-27

Missouri: Mo. Stat. § 335.086

North Carolina: N.C. Gen. Stat. §90-171.43

Texas: Tex. Occ. Code § 301.251

Nevada: Nev. Rev. Stat. § 632.315

60. Bragg was terminated because of her objections to providing nursing services without a proper license in those states.

61. As a direct and proximate result, Bragg has suffered and continues to suffer monetary damages including, but not limited to, lost wages, damage to his reputation, mental anguish, and embarrassment. These losses are permanent and continuing.

62. Before she was fired by Centene, Bragg was paid $42.80 an hour and worked a full forty-hour work week with occasional overtime.

63. Bragg has, despite reasonable efforts, been unable to secure employment and so as of the filing of this lawsuit so she has lost out on roughly $60,000 in salary as the result of her wrongful termination.

64. This is because concurrent review is a highly specialized position, and Bragg's career with Centene took her out of the hospital setting for almost a decade, making it very difficult to find a patient-facing position willing to take her.

65. The jobs Bragg has been able to find and apply to for offer a significantly reduced salary, and so even if Bragg can find work, she expects to be making significantly less money

entitling her to reasonable front-pay damages as equitable relief.

66. As a Plaintiff under the Florida Whistleblower Act, Plaintiff is entitled to seek and is seeking emotional damages as well as the economic damages outlined above.

67. The FWA provides for the right for Bragg to seek attorney's fees and costs against Centene if she prevails in this action. *See* Fla. Stat. § 448.104.

WHEREFORE, Plaintiff demands judgment against Defendant for her damages, inclusive of back pay, front pay, compensation for emotional pain and mental anguish, her reasonable attorneys' fees and costs, and such other relief the Court deems to be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all such claims as may be so triable as of right.

Dated: July 24, 2025.

Respectfully submitted,

By: s/ *James A. Odell*
**Ravindran Law Firm PLLC**
2525 Ponce de Leon Blvd., Ste. 300
Coral Gables, FL 33134
Telephone Number: 305-677-8713
James A. Odell, Esq. (FBN 101396)
Email: james@ravindranlaw.com
Iva U. Ravindran, Esq. (FBN 60447)
Email: iva@ravindranlaw.com